IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Patrick Joel Harris, ) | C/A No. 0:15-4628-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Patrick Joel Harris, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   whether the claimant has a "severe" impairment;

(3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)   whether the claimant can perform his past relevant work; and

(5)   whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



**ADMINISTRATIVE PROCEEDINGS**

In February 2012, Harris applied for DIB, alleging disability beginning March 28, 2007.[2] Harris's application was denied initially and upon reconsideration, and he requested a hearing before an ALJ. A video hearing was held on February 25, 2014, at which Harris appeared and testified, and was represented by W. Grady Jordan, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision on June 20, 2014 finding that Harris was not disabled. (Tr. 13-22.)

Harris was born in 1973 and was forty years old on the date last insured. (Tr. 20.) He has a high school education with specialized training as a brick mason, and past relevant work experience as an account manager for a rental agency, a chemical operator, a process technician for a bakery, and a glue mixer in a glue factory. (Tr. 189-90.) Harris alleged disability due to lower back problems, heel problems, nerve damage, a back injury, and neurological shaking. (Tr. 188.)

In applying the five-step sequential process, the ALJ found that Harris had not engaged in substantial gainful activity from his alleged onset date of September 13, 2010 through his date last insured of September 20, 2013. The ALJ also determined that, through the date last insured, Harris's degenerative disc disease of the lumbar spine, status post surgeries; obesity; degenerative joint disease of the left knee, status post surgery; sleep related breathing disorder; hypertension; and headaches were severe impairments. However, the ALJ found that, through the date last insured, Harris did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that, through the date last insured, Harris retained the residual functional capacity to

---

[2] Harris later amended his alleged onset date to September 13, 2010.

Page 3 of 18



perform sedentary work as defined in 20 CFR 404.1567(a), except he can frequently push or pull with the bilateral upper extremities; can occasionally operate foot controls with his right lower extremity; can frequently operate foot controls with his left lower extremity; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, but for no more than four to six steps at a time, and with the assistance of a single handrail; can balance occasionally, including with a hand-held assistive device, which is required for uneven terrain or prolonged ambulation (defined as walking more than 30 minutes at one time); can stoop occasionally; cannot crouch; can occasionally kneel or crawl; must avoid concentrated exposure to excessive vibrations, and environmental irritants (such as fumes, odors, dusts, or gases); must avoid concentrated exposure [to] poorly ventilated areas and to hazards (e.g., dangerous machinery and unprotected heights); can have no exposure to direct sunlight (but this does not include exposure to sunlight going to and from work); and is limited to occupations not performed below bright, flashing lights (does not include normal exposure to neon lights).

(Tr. 16.) The ALJ found that, through the date last insured, Harris was unable to perform any past relevant work, but that considering Harris's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Harris could have performed. Therefore, the ALJ found that Harris was not disabled from the alleged onset date of September 13, 2010 through the date last insured of September 30, 2013.

The Appeals Council denied Harris's request for review on September 18, 2015, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant



evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Harris raises the following issues for this judicial review:

A.  The ALJ's order fails to make a finding of severity as to the Plaintiff's right lower extremity, as required by SSR 96-3p.

B.  The ALJ failed to comply with 20 CFR § 404.1527 in not according adequate weight to the opinion of Plaintiff's treating physician.

C.  The ALJ failed to apply SSR 00-3p in evaluating the effects of the Plaintiff's extreme obesity, as indicated by his weight of 247 at a height of 5'5" resulting in a BMI of 41.1.

D.  While the ALJ briefly summarized Plaintiff's testimony in the decision, he erred in failing to provide specific rationale for rejecting this testimony, as required by SSR 96-7p.

(Pl.'s Br., ECF No. 13.)

## DISCUSSION

**A.     Step Two**

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do



basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

At Step Two, the ALJ found that Harris's degenerative disc disease of the lumbar spine, statue post surgeries; obesity; degenerative joint disease of the left knee, status post surgeries; sleep related breathing disorder; hypertension; and headaches were severe impairments, but that Harris's alleged viral meningitis was a nonsevere impairment. Harris argues that the ALJ erred in failing to address whether his issues related to the calcaneal fracture of the right lower extremity constituted a severe or nonsevere impairment.

In support of his allegations of error, Harris points out that the state agency non-examining reviewers found that his fracture of the right lower extremity was a severe impairment. (Pl.'s Br. at 4, ECF No. 13 at 4) (citing Tr. 118 & 129). Harris also relies on medical evidence demonstrating that he underwent four surgeries on his right ankle and was treated by orthopedists and pain management specialists during the relevant period, as well as his testimony of his pain and loss of



function. Harris acknowledges that the ALJ discussed the medical treatment regarding Harris's right lower extremity, but argues that the ALJ failed to address the related impairments.

Finally, Harris maintains that he is permanently disabled but alternatively argues that the ALJ erred in failing to address a possible closed period of disability covering the time period during which Harris had the four surgeries on his right lower extremity. As summarized by Harris, these surgeries consisted of the following:

- Open reduction and internal fixation followed by percutaneous fixation of right os calcis fracture with cannulated screws, performed 9/13/11
- Removal hardware, right calcaneus and Irrigation and debridement, right tibial pin tract osteomyelitis, performed 12/6/11
- Subtalar arthrodesis and harvesting of tibial bone graft, performed 9/28/12
- Removal of hardware, curet of cyst, and injection, performed 10/23/13.

(Id. at 6.) Harris argues that recovery time would be needed after each surgery and that his medical records reflect difficulties between surgeries, such as a severe infection with a wound; reports of a severely antalgic gait, significant pain, and trouble walking; injections in the right ankle; and inflamation and edema in the ankle joint. Harris also argues that during the recovery period of his ankle, his existing back problems and neurological symptoms were exacerbated.

As an initial matter, although the ALJ may not have mentioned Harris's issues related to the calcaneal fracture of the right lower extremity in Step Two of the sequential evaluation, the ALJ's decision reflects that he specifically considered this alleged impairment in evaluating Harris's residual functional capacity. Thus, the decision clearly reflects that the ALJ considered and evaluated this impairment in evaluating Harris's application for benefits. In fact, the ALJ's decision reflects that he specifically considered Harris's testimony as well as the medical records addressing Harris's right ankle, including the four surgeries. (See Tr. 17-20.) Therefore, the court finds that although the ALJ may have erred in failing to evaluate this impairment at Step Two, Harris cannot



establish any harm solely from this error, as a review of the decision reflects that the ALJ considered Harris's alleged impairment stemming from his right ankle throughout the decision. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (adopting Report and Recommendation that included a collection of cases and finding "no reversible error where the ALJ does not find an impairment severe at step two provided that he or she considers that impairment in subsequent steps").

With regard to Harris's argument that the ALJ erred in failing to consider or address a closed period of disability, the court observes that the ALJ found that Harris was not disabled at any time from his alleged disability onset date through his date last insured. "Implicit in this finding is the fact that [the claimant] was not entitled to a closed period of disability at any relevant time." Atwood v. Astrue, Civil No. 5:11CV002-RLV-DSC, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011). Further, to the extent that Harris's arguments may be construed as challenging the ALJ's interpretation of some of these records or the weight given to the records, Harris is essentially asking the court to re-weigh the evidence. Moreover, the ALJ's decision reflects that Harris's residual functional capacity included specific limitations to address his right ankle, including not only a reduced range of sedentary work but specific limitations on operating foot controls with his right lower extremity and use of a hand-held assistive device. Where, as here, the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve the conflict. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the

ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

**B.   Treating Physician**

Harris also argues that the ALJ erred in discounting the opinion of his treating primary care provider, Dr. Daniel Dahlhausen. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that a finding that
>
> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors

Page 9 of 18



> provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id.

On October 8, 2013, Dr. Dahlhausen completed a two-page "Physical Questionnaire" in which he primarily checked or circled responses to questions as to Harris's physical abilities. (Tr. 624-25.) Dr. Dahlhausen indicated that his prognosis was poor; that during a typical workday Harris would constantly experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks; that he would not be able to walk any city blocks without rest or severe pain; that he could sit for thirty minutes at one time, stand for ten minutes at one time; stand/walk less than two hours and sit at least six hours total in an eight-hour workday; that he could rarely lift less than ten pounds and never lift ten pounds or more; and that he could rarely twist or stoop and never crouch/squat, climb ladders, or climb stairs. (Id.) Dr. Dahlhausen estimated that Harris would be absent from work more than four days per month as a result of his impairments or treatment. Dr. Dahlhausen checked "yes" to questions asking if Harris had a problem with swelling in his legs and if Harris's legs should be elevated during the day to alleviate the swelling. Dr. Dahlhausen stated Harris's legs should be elevated waist level for one hour when swollen. Finally, Dr. Dahlhausen indicated that 2007 was the earliest date that his diagnoses and descriptions of limitations applied. (Tr. 625.)

After discussing the other evidence of record, including the treatment records and Harris's testimony, the ALJ addressed the opinion evidence and found as follows:

> [T]he undersigned gives little weight to the physical questionnaire completed by Dr. Dahlhausen, the claimant's primary care provider, as the extreme limitations he sets forth in the questionnaire are somewhat inconsistent with the claimant's reports of "doing well"; Dr. Broderick's statement that the claimant did not need assistive devices; and Dr. Dahlhausen's physical examination findings, which showed normal muscle strength in the lower extremities (Ex. 13F at 15; 26F at 2). The undersigned gives some weight to the assessments of the state agency consultants, as they are consistent with the claimant's multiple surgeries and his documented improvement; however, the undersigned has given the claimant the benefit of the doubt in limiting him to less strenuous exertion.

(Tr. 20.)

Harris first appears to challenge the ALJ's description of the opined limitations as "extreme," arguing that the opined limitations are not so far from the ALJ's own findings. The Commissioner argues that "extreme" was an "apt characterization" as Dr. Dahlhausen's opinion indicates that "[Harris]—a person in his early forties who used to perform semi-skilled, heavy work (Tr. 68-69)—could not perform even unskilled sedentary work." (Def.'s Br. at 13, ECF No. 14 at 13.) The court finds that regardless of the parties' dispute over the characterization of these limitations, remand is not warranted on this basis.

Harris also argues that the ALJ failed to provide adequate reasons to discount Dr. Dahlhausen's opinion. Harris argues that although Dr. Dahlhausen indicated in January 2014 that Harris was "doing well" and had normal muscle strength in his lower extremities, the ALJ "cherry-picked" phrases from a treatment note. Harris argues that the remainder of the January 2014 treatment note clarifies these statements. Harris appears to rely on the following additional statements in this treatment note: (1) statements that "[t]he ankle pain has been occurring in a persistent pattern," "[t]he course has been without change," and "[t]he ankle pain is characterized

as a dull aching" under the heading "History of Present Illness"; (2) portions of the "Review of Systems" indicating the presence of "[j]oint [p]ain, [p]ain with movement, ankle pain and limitation of movement"; "[t]rouble walking and [t]remor"; and "[a]nxiety, [d]epression, [i]mpaired [c]ognitive [f]unction and [i]nability to [c]oncentrate"; (3) and findings from the physical examination indicating "Gait - High-stepping.  Note:  cru[t]ches with lt. ankle pain/stiffness" and "Note:  fusion with decreased ROM rt. ankle." (Tr. 674-75.)  With regard to Dr. Broderick's statement that Harris did not need assistive devices (see Tr. 464), Harris argues that the statement was made in February 2012 after two of the four surgeries on Harris's right ankle, that later records reveal continued complaints of pain and difficulty with mobility, and that a September 2012 MRI revealed intense inflamation and edema in the ankle joint (see Tr. 449).

   Upon review of the ALJ's decision and the record, the court concludes that the ALJ appears to have applied the relevant factors in evaluating Dr. Dahlhausen's opinion and finds that Harris has failed to demonstrate that the ALJ's decision to afford little weight to Dr. Dahlhausen's opinion is unsupported by substantial evidence or based on an incorrect application of the law.  See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted).  In discussing Dr. Dahlhausen's opinion, the ALJ recognized that Dr. Dahlhausen was Harris's primary care provider but found that his opinion was not consistent with the record.  Thus, the decision reflects that the ALJ weighed this opinion and

reasonably found that the medical findings and observations in the record did not support them. Contrary to Harris's argument that the ALJ "cherry-picked" the record, the ALJ's discussion as a whole reveals that he considered the entire record. Moreover, the ALJ limited Harris to a reduced range of sedentary work. Although Harris may be able to point to selective records that arguably support Dr. Dahlhausen's opinion, he has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence based on the record presented. It appears that the ALJ, as part of his duties in weighing the evidence, properly relied on medical evidence in making his residual functional capacity determination and resolving conflicts of evidence. As stated above, where the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve the conflict. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

For all of these reasons, the court finds that Harris has not shown that the ALJ's decision with regard to Dr. Dahlhausen's opinion was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**C.     Obesity**

Harris next argues that the ALJ erred in failing to apply SSR 00-3p in evaluating the effects of Harris's extreme obesity. As an initial matter, the court notes that SSR 00-3p was superseded by SSR 02-01p. See SSR 02-01p, 2002 WL 34686281, at *1. Although the ALJ does not appear to have expressly examined the impact of Harris's obesity in formulating his residual functional capacity, this omission does not require a remand under the facts of this case. The ALJ thoroughly



discussed all of the evidence presented in this case in his residual functional capacity analysis. The ALJ specifically found that Harris's obesity was a severe impairment. Further, when considering his functional limitations, the ALJ specifically referenced Harris's weight. Finally, the ALJ gave some weight to the state agency reviewer's opinion, which explicitly considered Harris's obesity. (Tr. 20, 129-32.) Harris's reliance on his testimony that he believed his weight caused his left knee to occasionally give way fails to demonstrate that additional limitations are warranted. Moreover, the ALJ discounted Harris's credibility, which is further addressed below. Thus, even if the ALJ erred in failing to further discuss his obesity, Harris cannot demonstrate any harm and remand is not warranted. See SSR 02-01p, 2002 WL 34686281, at *6 (providing that "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.").

**D.    Harris's Credibility**

Finally, Harris argues that the ALJ erred in failing to provide specific reasons to reject his testimony, citing SSR 96-7p. With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these

determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

- (i) Your daily activities;
- (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
- (iii) Precipitating and aggravating factors;
- (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
- (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
- (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
- (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ summarize Harris's allegations as follows:

> In his initial disability report, the claimant wrote that he was limited in his ability to work due to a back injury, a crushed heel, nerve damage, migraines, and spinal meningitis (Ex. 3E at 2). He wrote that he stopped working in September 2009 because of his conditions and because of other reasons (Ex. 3E at 3). In a later disability report, the claimant wrote that he underwent a fusion and bone graft surgery on his right foot in September 2012 (Ex. 8E at 1). He wrote that his foot did not rotate at all and that he could not walk for prolonged periods or climb slopes or hills (Ex. 8E at 1).
>
> At the hearing, the claimant testified that that [sic] he left his last full-time job after he had back surgery in 2009. He said that the procedures he has undergone on his back have not helped. He said that he has pain with bending and walking. The claimant testified that he often has to lie flat on his back and elevate his legs to relieve the pressure on his back. He said that lifting is difficult and that he needs a cane to walk. The claimant said that, since September 2011, he has undergone four surgeries on his right heel. He said that he cannot walk very long at all and has swelling in his right foot, for which he must elevate his legs. He said that sometimes his left knee just gives way on him. He said that he used to be a very active person but cannot do anything that he used to do.

(Tr. 17.)

The ALJ found that Harris's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible based on the record in this case. (Tr. 17.) The ALJ then proceeded to summarize the medical records, which included records from January 2011 through January 2014, as well as the opinion evidence. (Tr. 17-20.) Further, the ALJ stated that he gave Harris the benefit of the doubt by limiting him to less strenuous exertion than assessed by the state agency reviewers. The ALJ concluded, stating,

> [i]n sum, the above residual functional capacity assessment is supported by the objective medical evidence of record and the credible opinion evidence. In terms of the claimant's headaches, the imaging evidence has shown no acute process, intracranial hemorrhage, or other abnormalities, and his weakness was determined to be of unknown cause (Ex. 1F at 6; 24F at 6). In terms of his back pain, the evidence shows that the claimant was riding a horse in early 2011, after the alleged onset date, and contemporary x-rays showed no acute abnormality (Ex. 1F at 13). In



> May 2011, the claimant was noted to have full and pain-free flexion in the lumbar spine, and minimal discomfort with extension and side bending (Ex. 9F at 32). In terms of the claimant's ankle injury, the evidence shows that in February 2012, about five months after his injury, the claimant's orthopedic specialist told him to bear weight without an assistive device, and the specialist wrote that he did not believe the claimant's numbness and tingling were related to his fracture (Ex. 13F at 16). In January 2014, the claimant told his primary care provider that he was "doing well" since his latest surgery, and that his medication controlled his pain well (Ex. 32F at 1). A neurological examination showed normal muscle strength in the lower extremities (Ex. 32F at 2). The above limitation to a reduced range of sedentary work, with limited environmental exposure, limited postural activities, and limited use of the upper and lower extremities, adequately accounts for the objective findings of record.

(Tr. 20.)

Harris argues that the ALJ failed to give reasons for discounting Harris's credibility, and generally argues that Harris's testimony is supported by Dr. Dahlhausen's opinion and the longitudinal record. Upon review of the ALJ's decision as a whole, the records, and the parties' briefs, the court disagrees. The court finds that Harris has failed to demonstrate the ALJ's determination that Harris was not entirely credible is unsupported or controlled by an error of law. As stated above, it the ALJ's duty to weigh credibility. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Moreover, the ALJ's decision as a whole reflects that he considered and evaluated the relevant factors in weighing Harris's credibility, and in fact, found that giving Harris the benefit of the doubt, he was limited to a reduced range of sedentary work. See 20 C.F.R. § 404.1529(c)(3); Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints);

Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

## ORDER

For the foregoing reasons, the court finds that Harris has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 26, 2016
Columbia, South Carolina